977 So.2d 420 (2008)
Calvin GORDON a/k/a Cal, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-00687-COA.
Court of Appeals of Mississippi.
March 18, 2008.
*422 Calvin Gordon, appellant, pro se.
Whitman D. Mounger, Greenwood, attorneys for appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, attorney for Appellee.
Before KING, C.J., CHANDLER and ROBERTS, JJ.
ROBERTS, J., for the Court.
¶ 1. In November 2003, Tammy Smith asked her friend, Denise Watkins, to go and get Smith's daughter, Trudy Wilson, from Smith's house located next door.[1] Watkins complied, but when she could not locate Wilson, she began looking around the house. Watkins walked into a bedroom and saw Calvin Gordon having sex with Wilson. This was subsequently reported to the authorities, and Gordon was arrested. After additional investigation, Gordon was indicted on four counts of "[Capital] Rape" in violation of Mississippi Code Annotated section 97-3-65(1)(b) (Rev.2000). Following his trial in the Circuit Court of Humphreys County, Gordon was found guilty of all four counts and sentenced to what amounted to a forty-year term of imprisonment. Gordon now appeals, raising the following issues:
I. WHETHER GORDON'S TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE;
II. WHETHER THE TRIAL COURT ERRED IN DENYING GORDON'S MOTIONS FOR NEW TRIAL AND DIRECTED VERDICT;
III. WHETHER THE TRIAL COURT ERRED IN DENYING GORDON'S MOTION TO DISMISS THE INDICTMENT.[2]
¶ 2. Finding no error, we affirm.

*423 FACTS AND PROCEDURAL HISTORY
¶ 3. On November 17, 2003, while Smith was visiting her next door neighbor, Watkins, she asked Watkins to have Wilson, Smith's six-year-old daughter, come next door. Wilson was at Smith's house. After unsuccessfully attempting to obtain Wilson's attention by calling her name, Watkins went inside the house to locate her. When Watkins stepped into the back bedroom of Smith's home, she saw Gordon on top of Wilson, with her legs in the air, having sex. Watkins proceeded next door to inform Smith of the situation. As any mother would, Smith raced next door with a belt she obtained from Watkins to cease the despicable act. Once she arrived she did, indeed, cease the rape of her child by "whupping" her daughter and asking Wilson what she was doing "F-ing with her man." For reasons unknown to this Court, Smith did not report this to the police. Following this incident, Belinda Smith, Wilson's grandmother, after being informed by Wilson that Gordon had molested her and that "it was burning," took Wilson to the police station. Gordon was arrested the following month.
¶ 4. It was later discovered that Gordon allegedly had sex with Wilson on other occasions. Gordon was indicted on four counts of "[Capital] Rape," in violation of Mississippi Code Annotated section 97-3-65(1)(b) (Rev.2000), occurring between January 2002 and November 2003. Gordon, through his attorney, filed a demurrer and motion to dismiss arguing the indictment did not contain a crime cognizable under the law of the State of Mississippi, referring to the phrase "[Capital] Rape." After said motion was denied, a trial on the merits of the State's case was held in the Circuit Court of Humphreys County on March 3, 2005. After hearing all testimony, and giving the evidence presented its due and proper consideration, the jury returned a verdict of guilty as to all four counts. Following the jury's verdict, the trial court sentenced Gordon to twenty years per count, with the sentences for Counts I and II to run concurrently, and the sentences for Counts III and IV to run concurrently. The sentences in Count I and II were ordered to run consecutive to the sentence in Counts III and IV, for a total of forty years to serve. Gordon's attorney subsequently filed a motion for a new trial or, in the alternative, judgment of acquittal notwithstanding the verdict (JNOV), which was denied. This appeal soon followed. Additional facts will be discussed as needed.

ANALYSIS
I. WHETHER GORDON'S TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE.
¶ 5. Gordon's first argument is that his trial counsel rendered ineffective assistance of counsel in his representation during trial. Gordon cites several instances of conduct, both action and inaction, which will be listed below in which he claims his trial counsel's efforts amounted to constitutionally ineffective assistance.
¶ 6. The familiar standard espoused in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and adopted by the supreme court in Stringer v. State, 454 So.2d 468, 476 (Miss. 1984), cert. denied, 469 U.S. 1230, 105 S.Ct. 1231, 84 L.Ed.2d 368 (1985) guides our analysis of Gordon's claims. Specifically, the test we must employ is as follows:
The Strickland test requires a showing that counsel's performance was sufficiently deficient to constitute prejudice *424 to the defense. The defendant has the burden of proof on both prongs. A strong but rebuttable presumption, that counsel's performance falls within the wide range of reasonable professional assistance, exists. The defendant must show that but for his attorney's errors, there is a reasonable probability that he would have received a different result in the trial court.
Viewed from the totality of the circumstances, this Court must determine whether counsel's performance was both deficient and prejudicial. Scrutiny of counsel's performance by this Court must be deferential. . . . Where this Court determines defendant's counsel was constitutionally ineffective, the appropriate remedy is to reverse and remand for a new trial.
Rankin v. State, 636 So.2d 652, 656-57 (Miss.1994) (internal citations omitted).
¶ 7. With the above standard in mind, we review Gordon's record of alleged deficiencies, which are listed as follows: that his trial counsel was physically handicapped; that his trial counsel failed to preserve the record during voir dire; that his trial counsel failed to timely ask for a continuance; that his trial counsel failed to adequately question potential witnesses; that his trial counsel told the jury at the start of his opening statement, "I'm always reluctant to give an opening statement"; that his trial counsel failed to request the trial court voir dire Wilson to ensure she was competent to testify; that his trial counsel failed to object to leading questions asked of Wilson; that his trial counsel questioned Watkins on cross-examination concerning her unsure in-court identification of Gordon during direct examination; that his trial counsel failed to object to statements made by Watkins and Smith during trial; that his trial counsel failed to have performed an independent test on Gordon for chlamydia; that his trial counsel failed to object to the introduction of Gordon's urinalysis; that his trial counsel failed to call two witnesses; and that his trial counsel failed to prepare Gordon for trial.
¶ 8. As is obvious from the above list, the amount of alleged deficiencies on the part of Gordon's trial counsel is numerous. However, consideration of a claim of ineffective assistance of counsel on direct appeal is an unusual circumstance. Aguilar v. State, 847 So.2d 871, 878(¶ 17) (Miss.Ct. App.2002). The supreme court has dictated that when an appellate court is presented with such a claim it should abide by the following:
(1) Any defendant convicted of a crime may raise the issue of ineffective assistance of counsel on direct appeal, even though the matter has not first been presented to the trial court. The Court should review the entire record on appeal. If, for example, from a review of the record, as in Brooks v. State, 209 Miss. 150, 46 So.2d 94 (1950) or Stewart v. State, 229 So.2d 53 (Miss.1969), this Court can say that the defendant has been denied the effective assistance of counsel, the Court should also adjudge and reverse and remand for a new trial. See also State v. Douglas, 97 Idaho 878, 555 P.2d 1145, 1148 (1976).
(2) Assuming that the Court is unable to conclude from the record on appeal that defendant's trial counsel was constitutionally ineffective, the Court should then proceed to decide the other issues in the case. Should the case be reversed on other grounds, the ineffectiveness issue, of course, would become moot. On the other hand, if the Court should otherwise affirm, it should do so without prejudice to the defendant's right to raise the ineffective assistance of counsel issue via appropriate post-conviction *425 proceedings. If the Court otherwise affirms, it may nevertheless reach the merits of the ineffectiveness issue where (a) as in paragraph (1) above, the record affirmatively shows ineffectiveness of constitutional dimensions, or (b) the parties stipulate that the record is adequate and the Court determines that findings of fact by a trial judge able to consider the demeanor of witnesses, etc. are not needed.
(3) If, after affirmance as in paragraph (2) above, the defendant wishes to do so, he may then file an appropriate post-conviction proceeding raising the ineffective assistance of counsel issue. See Berry v. State, 345 So.2d 613 (Miss. 1977); Callahan v. State[, 426 So.2d 801 (Miss.1983)], supra. Assuming that his application states a claim, prima facie, he will then be entitled to an evidentiary hearing on the merits of that issue in the Circuit Court of the county wherein he was originally convicted. Once the issue has been formally adjudicated by the Circuit Court, of course, the defendant will have the right to appeal to this Court as in other cases.
Read v. State, 430 So.2d 832, 841-42 (Miss. 1983).
¶ 9. While Gordon's trial counsel could have arguably been a better advocate during portions of Gordon's trial, "[t]he Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." Turner v. State, 953 So.2d 1063, 1073(¶ 36) (Miss.2007) (quoting Yarborough v. Gentry, 540 U.S. 1, 8, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003)). We cannot say from a review of the record before us that Gordon's trial counsel was deficient in a constitutional sense. Additionally, the parties have not explicitly stipulated that the record before us is adequate for a determination of such. This issue is currently without merit; however, any claim of ineffective assistance of counsel is preserved in the event Gordon wishes to raise it in a post-conviction proceeding.
II. WHETHER THE TRIAL COURT ERRED IN DENYING GORDON'S MOTIONS FOR NEW TRIAL AND DIRECTED VERDICT.
¶ 10. Gordon next argues that the weight and sufficiency of the evidence presented at trial was lacking and could not support his conviction. We begin our review of this issue by noting the familiar but different standards of review that guide our analysis of a denial of a motion for directed verdict, which challenges the sufficiency of the evidence, and a denial of a motion for new trial, which challenges the weight of the evidence.
¶ 11. As to a denial of a motion for directed verdict or a motion for JNOV, the standard of review we must employ has been stated as:
We must, with respect to each element of the offense, consider all of the evidence  not just the evidence which supports the case for the prosecution  in the light most favorable to the verdict. The credible evidence which is consistent with guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
Le v. State, 913 So.2d 913, 956-57 (¶ 163) (Miss.2005) (quoting Wetz v. State, 503 So.2d 803, 807 (Miss. 1987)). However, *426 when reviewing the weight of the evidence, the following standard must be utilized:
A motion for a new trial is addressed to the sound discretion of the trial judge who may grant a new trial if he deems such is required in the interest of justice or [if] the verdict is contrary to law or the weight of the evidence. The trial judge should not order a new trial unless he is convinced that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would be to sanction an unconscionable injustice.
In reviewing this claim, this Court must accept as true the evidence favorable to the State. This Court will reverse only when it is convinced that the trial judge has abused his discretion. Further, where there is conflicting testimony, the jury is the judge of the credibility of the witnesses.
Le, 913 So.2d at 957 (¶ 164) (quoting Wetz, 503 So.2d at 812).
A. SUFFICIENCY OF THE EVIDENCE.
¶ 12. Gordon was indicted on four counts of "[Capital] Rape," in violation of Mississippi Code Annotated section 97-3-65(1)(b) (Rev.2006), which states, "[t]he crime of statutory rape is committed when: . . . (b) [a] person of any age has sexual intercourse with a child who: (i) [i]s under the age of fourteen (14) years; (ii) [i]s twenty-four (24) or more months younger than the person; and (iii) [i]s not the person's spouse." Specifically, Count I of Gordon's indictment stated:
THE GRAND JURORS of the State of Mississippi, taken from the body of the good and lawful men and women of Humphreys County, Mississippi, being duly selected, empaneled, sworn and charged in the Circuit Court of Humphreys County, Mississippi, upon their oaths, present that: CALVIN GORDON, did, on or about November 17, 2003, in Humphreys County, Mississippi, unlawfully, willfully and feloniously, have sexual intercourse with [Wilson], a female child, who is under the age of fourteen (14) years, and CALVIN GORDON, who is above the age of eighteen (18), in violation of Section 97-3-65(1)(b) of the Mississippi Code of 1972, as amended, against the peace and dignity of the State of Mississippi.
The remaining three counts were identical save for the date alleged. Count II alleged he committed one act between January 21, 2002, and January 20, 2003. Lastly, Counts III and IV alleged that he committed two acts between January 21, 2003, and November 16, 2003.
¶ 13. Gordon argues that the evidence presented at trial was not sufficient to prove the element of sexual intercourse. Specifically, Gordon states that the measure of evidence presented is lacking because, he claims, his conviction was based upon the testimony of an incompetent child and a contradictory witness.
¶ 14. Before delving into Wilson's testimony, we will address the issue of her competency to testify. Within his argument that a lack of sufficient evidence was presented, Gordon cites Mohr v. State, 584 So.2d 426, 431 (Miss.1991) for the proposition that the trial court should have conducted a competency hearing to determine Wilson's ability to testify. This amounts to a backhanded claim that the trial court erred by not conducting such a hearing; however, no such claim was ever presented to the trial court for consideration. Accordingly, Gordon waived any issue there may have been concerning the competency of Wilson in this regard. Dixon v. State, 953 So.2d 1108, 1116(¶ 22) (Miss.2007). Therefore, we will proceed with our review of the sufficiency of the evidence under the *427 assumption that Wilson's testimony was credible. See M.R.E. 601.
¶ 15. Gordon also questions the manner in which the State elicited Wilson's testimony, claiming that the most damning portions of her testimony were in response to leading questions. Again, we note that neither was an objection voiced at the time the questions were asked nor was the issue presented to the trial court for consideration. Nonetheless, while Mississippi Rule of Evidence 611(c) disallows the use of leading questions during direct examination, it qualifies this general prohibition with the phrase "except as may be necessary to develop [the witness's] testimony." M.R.E. 611(c). As to this, the supreme court has identified that the "`classic example' of a situation ripe for leading questions on direct is where the witness is a child." Keyes v. State, 733 So.2d 812, 814(¶ 8) (Miss.1999) (citation omitted). Therefore, notwithstanding the procedural bar, we cannot say the trial court erred in allowing the leading questions the State asked Wilson.
¶ 16. Moving to Wilson's testimony, she identified Gordon at trial and stated that he had sex with her a total of four times. She explained that one time was at her mother's house, which was the origin of the investigation, and the three previous times at his house. Specifically, the State asked:
Q. How many times did Mr. Gordon have sex with you?
A. Four.
Q. Okay. Could you tell the jury where those  where that occurred?
A. One time at my mother's house, three more times at his.
Wilson stated that the time Gordon had sex with her at her mother's house her mother came in and started to spank her. She initially testified nobody else was there when her mother spanked her, but she later clarified that her cousin and Watkins were present. During cross-examination, she testified that she did not say anything the first three times Gordon had sex with her because "it" was not bothering her. However, she stated that after the fourth time "it" was burning, and she told Smith.
¶ 17. Gordon testified that he never had sex with Wilson, and he argues on appeal that her testimony as to the three acts of sexual intercourse prior to November 17, 2003, is not sufficient to uphold his conviction. However, our supreme court has repeatedly stated:
Our case law clearly holds that the unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other credible evidence, especially if the conduct of the victim is consistent with the conduct of one who has been victimized. The victim's physical and mental condition after the incident, as well as the fact that the incident was immediately reported is recognized as corroborating evidence.
Ladnier v. State, 878 So.2d 926, 931(¶ 14) (Miss.2004) (quoting Collier v. State, 711 So.2d 458, 462(¶ 15) (Miss.1998)); Otis v. State, 418 So.2d 65, 67 (Miss.1982). In Otis, the victim, a fifteen-year-old special education student with an IQ of 77 or 78, testified that Otis, her teacher, raped her in the teachers' bathroom; however, she did not report this until five weeks later when questioned about it by the principal. Otis, 418 So.2d at 66. While Otis testified that he did not rape the victim, the supreme court upheld his jury conviction and stated, "[a]lthough she was not corroborated as to the actual rape itself, there were other facts surrounding the incident which had corroboration. It is conceded that a *428 person may be found guilty of rape on the uncorroborated testimony of the prosecuting witness." Id. at 67. Similarly, although Gordon claimed he did not have sex with Wilson, other corroborating evidence, while not voluminous, supports her testimony.
¶ 18. Dr. Daisy Thomas testified that she conducted a physical examination of Wilson. She stated that based on the results of her examination, it was her opinion that Wilson had been sexually assaulted. Specifically, she testified that "[t]he hymen was not intact, and the orifice was larger than it should be for a six-year-old, and there was a white-thick white vaginal discharge." During cross-examination, Dr. Thomas further explained as follows:
For [Wilson] to have a discharge, that means it didn't happen right then. Sometimes if somebody's hymen is not intact and they are assaulted or have sexual intercourse, you can tell by bleeding, but there was nothing like that at all with her. But this child has been, had  there's been sexual intercourse, there is no doubt about that. And the size  one and a half centimeters is about  no child that age [should] have a [their] vaginal area . . . that big at all. In fact, it should be really small, less than a millimeter almost. So there had been sexual intercourse with this child.
Additionally, Dr. Thomas stated that Wilson was tested for several sexually transmitted diseases, and she tested positive for chlamydia. She further testified that as a result of Wilson's positive test, Gordon was also tested for chlamydia. The result of his test was also positive
¶ 19. Therefore, as to Counts II, III, and IV, we are of the opinion that Wilson's testimony and the evidence stated above were legally sufficient for the jury to find him guilty of statutory rape as detailed in the abovementioned counts.
¶ 20. Regarding Count I, in addition to the evidence presented above, Watkins testified that she saw "Cal [Gordon] . . . on top of [Wilson], having sex." She further stated that "he had her legs in the air and he was on top of her having sex." As to Count I, accepting all credible evidence consistent with guilt as true, we find there was sufficient evidence to support the jury's verdict of guilty. This issue is without merit.
B. WEIGHT OF THE EVIDENCE.
¶ 21. Viewing all evidence previously discussed that is favorable to the State as true, we cannot say that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would be to sanction an unconscionable injustice. Therefore, the trial court did not abuse its discretion in denying Gordon's motion for a new trial.
III. WHETHER THE TRIAL COURT ERRED IN DENYING GORDON'S MOTION TO DISMISS THE INDICTMENT.
¶ 22. Gordon next argues that the trial court erred in failing to dismiss the charges against him as a result of his indictment being defective. He claims the indictment was fatally flawed for three reasons. Gordon argues that while each reason may not warrant a reversal individually, they cause the indictment to fall short of the constitutional requirements when taken together. Specifically, Gordon claims the indictment did not charge him with a valid crime, failed to charge an essential element of statutory rape, and did not state a sufficiently narrow time period for when the rapes allegedly occurred. We will address each in turn.
A. WHETHER THE INDICTMENT STATED A VALID CRIME.
¶ 23. Gordon essentially argues that the phrase "[Capital] Rape," as it appeared in *429 his indictment, was a false statement, as he was not charged with "capital rape," that "capital rape" was not an element of the charges brought against him, and inclusion of the phrase actually caused allegations in the indictment to exceed those essential elements that must be alleged.
¶ 24. The sufficiency of an indictment is a question of law that affords this Court a broad standard of review. Steen v. State, 873 So.2d 155, 161(¶ 21) (Miss.Ct.App.2004). An indictment's primary purpose is to inform the defendant of the charges against him so as to allow him to prepare an adequate defense. Evans v. State, 916 So.2d 550, 551(¶ 5) (Miss.Ct.App. 2005). In Evans, the appellant's indictment labeled the charge against him as "statutory rape," but he was actually charged with forcible rape. Evans, 916 So.2d at 552(¶ 6). Furthermore, the indictment listed the wrong code section. Id. This Court found that the mislabeling of the crime was mere surplusage, and it was not fatal to the indictment. Id.
¶ 25. The indictment at issue labeled each count as "[Capital] Rape," but Gordon was actually charged with statutory rape. However, the indictment otherwise complied with all requirements of Uniform Rule of Circuit and County Court Practice 7.06 and listed the specific and appropriate statute, namely section 97-3-65(1)(b). Gordon is correct in his assertion that capital rape was not an element of the crime of which he was charged, but that fact is of no consequence, as we find that the labeling of each count as "[Capital] Rape" was mere surplusage. Additionally, it can hardly be stated that capital rape was a false statement. The term "capital" when used in any Mississippi statute is used to describe any crime or offense "punishable by death or imprisonment for life in the state penitentiary." Miss.Code Ann. § 1-3-4 (Rev.2005). If the defendant is eighteen years of age or older, as was the case with Gordon, the maximum possible punishment for violation of section 97-3-65(1)(b) is imprisonment for life. Miss. Code Ann. § 97-3-65(1)(b) (Rev.2006). This issue is without merit.
B. WHETHER THE INDICTMENT FAILED TO INCLUDE ALL ESSENTIAL ELEMENTS.
¶ 26. In order to prove that the crime of statutory rape, under Mississippi Code Annotated section 97-3-65(1)(b), was committed it must be shown that a person of any age had sexual intercourse with a child under the age of fourteen, who was at least twenty-four months younger than the person, and was not the person's spouse. Miss.Code Ann. § 97-3-65(1)(b) (Rev. 2006). Gordon argues, without citing any case law in support, that the indictment was deficient as it failed to include language specifying that Wilson was at least twenty-four months younger than Gordon. We disagree.
¶ 27. The supreme court recently stated that "[R]ule 7.06 of the Mississippi Uniform Rules of Circuit and County Court Practice provides what is required to be provided in an indictment." Spears v. State, 942 So.2d 772, 774(¶ 6) (Miss.2006); see also Caston v. State, 949 So.2d 852, 858(¶ 14) (Miss.Ct.App.2007) (an indictment that complied with Rule 7.06 and gave the defendant notice of the charges against him was legally sufficient). Additionally, the inclusion of the specific subsection of the statute under which the defendant was charged has been held to provide actual notice of the crime charged. Caston, 949 So.2d at 858(¶ 13) (citing Roberson v. State, 595 So.2d 1310, 1318 (Miss. 1992)).
¶ 28. Rule 7.06 states the following:

*430 The indictment upon which the defendant is to be tried shall be a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation. Formal and technical words are not necessary in an indictment, if the offense can be substantially described without them. An indictment shall also include the following:
1. The name of the accused;
2. The date on which the indictment was filed in court;
3. A statement that the prosecution is brought in the name and by the authority of the State of Mississippi;
4. The county and judicial district in which the indictment is brought;
5. The date and, if applicable, the time at which the offense was alleged to have been committed. Failure to state the correct date shall not render the indictment insufficient;
6. The signature of the foreman of the grand jury issuing it; and
7. The words "against the peace and dignity of the state."
The court on motion of the defendant may strike from the indictment any surplusage, including unnecessary allegations or aliases.
URCCC 7.06.
¶ 29. The portion of the indictment at issue stated:
CALVIN GORDON, did, on or about November 17, 2003, in Humphreys County, Mississippi, unlawfully, willfully and feloniously, have sexual intercourse with [Wilson], a female child, who is under the age of fourteen (14) years, and CALVIN GORDON, who is above the age of eighteen (18), in violation of Section 97-3-65(1)(b) of the Mississippi Code of 1972, as amended, against the peace and dignity of the State of Mississippi.[3]
It is clear from a plain reading of the indictment as a whole that each of the seven enumerated requirements of Rule 7.06 were satisfied. The absence of the specific language of the statute, pertaining to the victim of the rape being twenty-four or more months younger than person accused, is of no moment. In addition to the fact that the specific code section was listed in each of the four counts of Gordon's indictment, the "plain, concise and definite written statement" within each count stated that Wilson was under the age of fourteen and Gordon was over the age of eighteen. Based upon the facts before us, we find that Gordon's indictment was legally sufficient. This issue is without merit.
C. WHETHER THE DATES PROVIDED WERE TOO BROAD TO PROVIDE PROPER NOTICE TO GORDON.
¶ 30. Gordon next argues that the indictment was deficient as a result of the periods of time listed in the indictment being vague and uncertain as when Gordon allegedly committed the rapes. The Uniform Rules of Circuit and County Court Practice require that an "indictment . . . include . . . [t]he date and, if applicable, the time at which the offense was alleged to have been committed." URCCC 7.06(5). However, in cases involving sexual abuse of a child a specific date is not required "so long as the defendant is `fully and fairly advised of the charge against him.'" Baker v. State, 930 So.2d 399, 405(¶ 12) (Miss.Ct.App.2005) (an indictment which alleged two counts of sexual battery during a time span of 538 days for one and 903 days for the other was not *431 deficient) (quoting Eakes v. State, 665 So.2d 852, 860 (Miss.1995)).
¶ 31. Gordon cites Wilson v. State, 515 So.2d 1181 (Miss.1987) in support of his position that "the vague and uncertain dates produced in the indictment did not give [him] the proper notice to maintain an adequate defense." However, Wilson does not stand for the proposition that a non-specific time frame in an indictment equates to a deficiency. Wilson was charged with committing rape on or about May 13, 1985. Id. at 1182. Following his conviction, he claimed that he was prejudiced by the fact that the indictment did not contain a specific date, but the supreme court affirmed his conviction. Id. at 1182-1183. While the supreme court conceded that "[i]n all fairness, notice of a specific date is often essential to the preparation of a defense  especially where an alibi defense is relied on," the court stated that Wilson "raised no credible claim of unfair surprise or prejudice. . . ." Id. at 1183.
¶ 32. Similarly, Gordon does not put forth any credible claims of unfair surprise or prejudice, other than the bare assertion that the dates in the indictment did not allow him to maintain a proper defense. There is no evidence in the record that Gordon planned to put forward any alibi defense, and he does not make such a claim on appeal. Furthermore, he asserts no specific argument on how the language of the indictment prejudiced his defense in any way. "This Court's pivotal consideration when considering the validity of an indictment on appeal, `is whether the defendant was prejudiced in the preparation of his defense.'" Caston, 949 So.2d at 858(¶ 14) (citing Wilson v. State, 815 So.2d 439, 443(¶ 11) (Miss.Ct.App.2002)). Based on the record before us, we can find no prejudice that resulted from any of Gordon's alleged errors within his indictment. Therefore, this issue is without merit.
¶ 33. THE JUDGMENT OF THE HUMPHREYS COUNTY CIRCUIT COURT OF CONVICTION OF COUNTS I, II, III, AND IV OF CAPITAL RAPE AND SENTENCES OF TWENTY YEARS EACH, WITH SENTENCES IN COUNT I AND COUNT II TO RUN CONCURRENTLY, AND THE SENTENCES IN COUNT III AND COUNT IV TO RUN CONCURRENTLY, AND THE SENTENCES IN COUNT I AND COUNT II TO RUN CONSECUTIVELY TO THE SENTENCES IN COUNT III AND COUNT IV, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HUMPHREYS COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR.
NOTES
[1] In an effort to protect Trudy's identity, pseudonyms are used in place of the victim's and witnesses' actual names.
[2] In his initial appeal to this Court, Gordon's trial attorney filed a brief in accordance with Lindsey v. State, 939 So.2d 743 (Miss.2005), stating that he could not identify any arguable issues to raise on appeal. In response, Gordon filed a supplemental brief raising several of the issues now brought on appeal. This Court requested briefing on the issues raised by Gordon, and as there were allegations of ineffective assistance of counsel, different appellate counsel was assigned to Gordon.
[3] As mentioned above, each of the four counts contained separate dates and/or date ranges.