ISHEE, J.,
for the Court:
¶ 1. In 2012, Kenneth M. Hines was convicted in the Neshoba County Circuit Court of statutory rape and sexual battery of a child. He was sentenced as a habitual offender to life in the custody of the Mississippi Department of Corrections (MDOC) on each count, with the sentences to run consecutively. Aggrieved, Hines appeals, arguing (1) the indictment did not give him sufficient notice of the crimes committed; (2) the indictment was defective due to a statute-of-limitations issue; (3) the evidence was insufficient to support the verdict; and (4) the State made prejudicial comments during its closing argument. Finding no error, we affirm.
STATEMENT OF FACTS
¶ 2. In 1997, Hines began dating Audrey Arnold, who had two children at the time. Arnold’s son, A.D., was born in 1994, and D.W., Arnold’s daughter, was born in 1996.[1] Hines and Arnold later had a daughter together, Breanna, who was born in 2000.
¶ 3. A.D. and D.W. did not have fathers in their lives, and looked to Hines as a father figure soon after Hines and Arnold started dating. Hines lived with Arnold and the children until the couple split up in April 2001. Hines later moved in with his sister, Diane Stokes.
¶ 4. Hines did not visit any of the children between April 2001 and May 2002. In 2002, while Hines was living with Stokes, he began visiting with all three of the children. The record indicates that Hines continued visiting with the children from 2002 through 2004, but stopped seeing the children after 2004. He did not see them again until 2011. The record reflects that neither A.D. nor D.W. told Arnold that there were problems with Hines’s visits.
¶ 5. In 2010, Arnold took D.W. to a doctor’s appointment. Arnold asked D.W. if she had ever had sexual relations with a man. She warned D.W. not to lie, claiming the doctor would be able to discern whether or not she was telling the truth. D.W. testified that she then told her mother that when she was around six or seven years old, Hines raped her while she was at Stokes’s house during one of their visits. At trial, she testified that Hines was drunk and told her to go to the back bedroom belonging to Stokes. She stated that he locked the door and raped her despite her repeated requests that he stop. D.W. also stated that later that day, she was walking through Stokes’s house to go to the restroom and witnessed Hines “messing with” her brother on a twin bed in another bedroom. She stated that Hines told her repeatedly not to tell anyone, including Arnold.
¶ 6. Arnold immediately contacted the authorities. During the authorities’ investigation, A.D. admitted that Hines had assaulted him. A.D. testified that on the day in question, Hines took him into a back bedroom, told him to get on his hands and knees on the twin bed, pulled his pants down, and anally raped him. When asked why they had waited six years to come forward to their mother, both children indicated that they were embarrassed, frightened, and unsure how to tell Arnold what had happened.
*987 ¶ 7. Hines was indicted in May 2011 for statutory rape and sexual battery of a child stemming from the incidents occurring “on or about 2000-2004.” Neshoba County Sheriffs Department Investigator Kevin Baysinger testified that the investigation eventually revealed that the incidents occurred sometime around August 2003. While the indictment was never altered or amended, the circuit court granted the defense’s jury instructions D-8 and D-9, which narrowed the possible time frame of the crimes from May 2003 through August 2004.
¶ 8. After a trial on the merits in March 2012, the jury returned a guilty verdict on both counts. Hines’s counsel filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. The motion was denied. The circuit court then sentenced Hines as a habitual offender to life in the custody of the MDOC on both counts, with the sentences to run consecutively.
DISCUSSION
I. Indictment
¶ 9. We address Hines’s first two assignments of error jointly because both issues relate to Hines’s indictment. Hines argues that the indictment was insufficient to provide him with proper notice, due to the four-year time span included therein. He also asserts that the applicable statute of limitations for one of the crimes charged would have precluded his being charged for conduct during the first two years of the time span included in the indictment, thereby making the indictment defective.
¶ 10. “The primary purpose of an indictment is to give the defendant fair notice of the crime charged. It must contain the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation.” Faulkner v. State, 109 So.3d 142, 146 (¶ 13) (Miss.Ct.App.2013) (internal quotations and citations omitted). Hines claims he was not sufficiently notified of the charges against him because the four-year time span included in the indictment was too broad.
¶ 11. Nonetheless, Hines was granted two jury instructions which limited the time span for the commission of the crimes to between May 2003 and August 2004. This could arguably have served as a constructive amendment narrowing the time span in the indictment. The Mississippi Supreme Court has “specifically held ... that an accused may not complain of an instruction given at his request.” Caston v. State, 823 So.2d 473, 508 (¶ 121) (Miss.2002) (citation and quotation omitted). Hence, we consider the time span of May 2003 through August 2004 when reviewing whether Hines was on notice of the crimes charged. We find that the fifteen-month time span was not unreasonably large for Hines to be on notice as to the crimes charged. The record reflects that Hines did not have contact with A.D. or D.W. between 2001 and 2003, and again from 2004 until 2011. As such, the only time Hines would have been around the children was during the fifteen-month time span between May 2003 and August 2004. We do not find this time frame unreasonably large so as to prevent Hines from defending himself.
¶ 12. Hines also alleges that the original four-year time span rendered the indictment defective. Rule 7.06(5) of the Uniform Rules of Circuit and County Court requires than an “indictment ... include ... [t]he date, and if applicable, the time at which the offense was alleged to have been committed.” “However, in cases involving sexual abuse of a ehild[,] a specific date is not required so long as the defendant is ‘fully and fairly advised of the *988 charge against him....'" Gordon v. State, 977 So.2d 420, 430-31 (¶ 30) (Miss.Ct.App.2008) (citation omitted). Therefore, the question before us is whether Hines was prejudiced in the preparation of his defense. See Caston v. State, 949 So.2d 852, 858 (¶ 14) (Miss.Ct.App.2007) (citation omitted).
¶ 13. We cannot see how Hines was prejudiced in his defense of the case. Although the indictment listed a four-year time span, Hines was only in contact with the children during the fifteen months noted in his two jury instructions. That alone narrowed the window of opportunity by more than half.
¶ 14. Hines argues that the charges alleged in the first two years of the indictment’s four-year window would have been barred by the statute of limitations as it pertained to the sexual-battery-of-a-child charge. Hines notes that from 2000 until 2002, the first two years of the indictment’s time span, Mississippi Code Annotated section 99-1-5 (Rev.1998) provided that there was no statute of limitations with regard to sexual battery of a child under the statute used to indict Hines— Mississippi Code Annotated section 97-3-95(l)(d) (Rev.2006) — which applies to sexual battery of a child under fourteen years of age by someone twenty-four months older than the child. Hines asserts that only Mississippi Code Annotated section 97-3-95(l)(c) (Rev.2006), applying to sexual battery of a child at least fourteen years of age but younger than sixteen years of age by someone thirty-six months older than the child, was granted a reprieve from a statute of limitations. Hence, Hines argues that the general two-year statute of limitations listed within section 99-1-5 barred his prosecution for any sexual battery of a child from 2000 through 2002, and, therefore, the indictment was defective on its face.
¶ 15. However, the historical commentary to section 99-1-5 notes that on May 16, 2002, the Legislature “ratified the correction of a typographical error ... [wherein] [t]he words ‘Section 97-3-95(e)’ were changed to ‘Section 97-3-95(l)(c) or (d)[.]’ ” (Emphasis added). Hence, the Legislature made it clear that it was always the intent of the statute to include both subsections (c) and (d) of the sexual-battery-of-a-child statute in negating any statute-of-limitations issues.
¶ 16. Regardless, neither Hines nor his counsel made an objection to the indictment on this ground prior to Hines’s appeal. Mississippi Code Annotated section 99-7-21 (Rev.2007) states:
All objections to an indictment for a defect appearing on the face thereof, shall be taken by demurrer to the indictment, and not otherwise, before the issuance of the venire facias in capital cases, and before the jury shall be impaneled in all other cases, and not afterward. The court for any formal defect, may, if it be thought necessary, cause the indictment to be forthwith amended, and thereupon the trial shall proceed as if such defect had not appeared.
As such, even if Hines had timely objected to the indictment, the circuit court’s solution would have been to amend the indictment to reflect a time period not in conflict with any alleged statute-of-limitations issues. This was essentially done by Hines’s counsel with the offer of jury instructions D-8 and D-9. Thus, although this issue is procedurally barred due to a lack of objection, the remedy would have been an amendment to the indictment. While an official amendment did not occur, Hines’s counsel was adequately able to prepare his defense on the basis that the crime could only have occurred during the time period in which Hines was in contact with the children via visitation — the fifteen-month *989 time period that was presented to the jury in the jury instructions offered by the defense. These issues are without merit.
II. Weight and Sufficiency of the Evidence
¶ 17. Hines next asserts that the evidence was insufficient to support the verdicts or, alternatively, that the verdicts were not supported by the overwhelming weight of the evidence. The supreme court has stated that in considering the denial of a motion for a JNOV, “the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Additionally, “[wjhen reviewing a denial of a motion for a new trial, this Court ‘will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.’ ” Vaughn v. State, 926 So.2d 269, 271 (¶ 4) (Miss.Ct.App.2006) (quoting Bush, 895 So.2d at 844 (¶ 18)).
¶ 18. At trial, Arnold, D.W., A.D., and Investigator Baysinger testified on behalf of the State. The defense presented three witnesses: Diane Stokes; her son, Bradley Goodin; and her ex-husband, Kevin Drury. Stokes, Goodin, and Drury all testified that they knew nothing about the incidents in question. Stokes testified that neither A.D. nor D.W. ever visited her home while Hines was present. She stated that to her recollection, only Breanna visited them while Hines was living there. Drury testified that he was living in Stokes’s home during the time span in question. His testimony was mostly in keeping with Stokes’s, and he stated that while A.D. and D.W. may have visited Hines at Stokes’s house a few times, he did not ever remember them spending the night. Goodin, who was approximately six years old at the time of the incidents, testified that he did not remember A.D. and D.W. visiting the home either during the day or at night during the time span in question.
¶ 19. In essence, Hines’s defense centered on his assertion that A.D. and D.W. never visited him during the time span in question. However, the State countered this claim by presenting testimony from the victims themselves, as well as Arnold. A.D. and D.W. both testified in detail regarding the sexual abuse. Arnold testified regarding the children’s visitation with Hines.
¶20. We have consistently held that “the jury is the final arbiter of a witness’s credibility.” Collins v. State, 97 So.3d 1247, 1251 (¶ 14) (Miss.Ct.App.2012) (quoting Morgan v. State, 681 So.2d 82, 93 (Miss.1996)). It is evident that the jury found the testimony of the State’s witnesses to be more credible than that of the defense’s witnesses. As such, we cannot find that the evidence was insufficient to support the verdicts or that the overwhelming weight of the evidence was contrary to the verdicts. These issues are without merit.
III. Closing Argument
¶ 21. In his last assignment of error, Hines claims that he was prejudiced by the following remark made by the State during closing arguments: “But I want you to know that the defense[’s] purpose is to obtain a not-guilty verdict for his defendant. That’s his only purpose.” Hines’s counsel failed to make a contemporaneous objection to the statement when it was made. It is well settled that a contemporaneous objection must be made to an allegedly prejudicial remark during open *990 ing or closing arguments in order to preserve the issue for appeal. See Hawkins v. State, 90 So.3d 116, 121 (¶ 20) (Miss.Ct.App.2012). “Failure to object waives the issue on appeal, since ‘the trial judge is in the best position to determine if an alleged objectionable remark has a prejudicial effect.’” Id. (quoting Spicer v. State, 921 So.2d 292, 309 (¶¶ 31-32) (Miss.2006)). Accordingly, this issue is without merit.
¶ 22. THE JUDGMENT OF THE NESHOBA COUNTY CIRCUIT COURT OF CONVICTION OF STATUTORY RAPE AND SEXUAL BATTERY AND SENTENCE AS A HABITUAL OFFENDER OF LIFE ON EACH COUNT, WITH THE SENTENCES TO RUN CONSECUTIVELY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ROBERTS, CARLTON, FAIR AND JAMES, JJ., CONCUR. MAXWELL, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. This Court declines to reveal the identity of minors in sexual-abuse cases. In the interest of the children’s privacy, their names have been substituted with initials.