642 So.2d 1325 (1994)
Charles E. HARRIS, Jr.
v.
STATE of Mississippi.
No. 91-KA-00716.
Supreme Court of Mississippi.
September 8, 1994.
Donald W. Boykin, Jackson, for appellant.
Michael C. Moore, Atty. Gen., Pat S. Flynn, Asst. Atty. Gen., Jackson, for appellee.
En Banc.
BANKS, Justice, for the Court:
In this appeal we are presented with an alleged assault upon a police officer with an automobile. The appellant asserts that the evidence was insufficient to establish that he intended to assault the officer. Our view of the record suggests that there was sufficient evidence to allow a fair-minded jury to conclude beyond a reasonable doubt that Harris intended to cause the officer serious bodily injury by running over him with an automobile. We note, however that the indictment, the primary jury instruction, and closing argument of the prosecutor, misconstrued our aggravated assault statute by asserting an oxymoronic "reckless attempt" in both the indictment and instruction and then arguing that no finding of intent was required. We are compelled to affirm, nevertheless, because neither the indictment nor the instruction were objected to or attached on this appeal.

I
On August 10, 1989, Charles Harris, Jr. was arrested by the Jackson Police Department and indicted for the aggravated assault on a law enforcement officer. The indictment alleged in part that Harris did "purposely, knowingly, or recklessly attempt to cause serious bodily injury to the body of C.E. Lee, Jr." a duly appointed and acting law enforcement officer, by running into Lee with a pick-up truck and "attempting to run over him as he was lying on the ground."
*1326 At the trial on March 6, 1991, the State's evidence consisted of the testimony of the three detectives on the Jackson Police Department, who were conducting an undercover operation and surveillance on August 10, 1989. It was the State's theory that Harris intended to injure police officer Lee, after the detective caught him in the midst of a drug transaction. Lee testified that on August 10, 1989, he was dressed in his undercover attire  white tennis shoes, an aqua colored shirt with a green and white short sleeved shirt worn unbuttoned over the other shirt. He testified that:
[u]sually around Wood and Ash Street, the scene of the crime, there is kind of a competition down there, who can sell their drugs  they'll near-about get into a fight about selling their drugs. If a vehicle pulls up to buy drugs, they'll all rush to it and try to be the first one to sell their drugs.
According to Lee, as the officers initially approached Harris' truck,
[t]here were several black males gathered around the truck. There was a black male at the passenger window and the driver's window with some more black males. And on each side of the vehicle  the black male standing in the street was hanging inside the truck.... As I was approaching the vehicle ... the people started scattering, running in different directions, and a black male had no shirt on, ... started running directly toward me. At that time, I pulled my pistol and told him to halt, and I identified myself as a police officer. At that time, he raised his arms above his head... . The truck didn't move until I told the guy to halt and he raised his arms.
Lee then stated that at the time the guy stopped and raised his hands, "the truck accelerated towards me, and I turned to get out of the way and the truck struck me in the left hip." "Once the truck knocked me to the ground, the truck stopped momentarily, I looked at the truck, from lying on the ground, and again he accelerated in my direction and I rolled over on a curb of Ash Street."
Sergeant J.D. Savell testified that "the truck went from the south side of the street to the north side of the street and knocked Detective Lee down," but Lee rolled out of the street. Savell testified that it was not completely dark and that there was no reason for Harris to pull his truck into the north side of the street. "I don't know why he stopped, but he stopped and he tried to run over him again, and he tried to run over him again deliberately."
Detective David Yates testified that heard a
real, real loud thump, something got hit. I heard Savell yell, "look out, look out;" and I turned around and saw Chuck Lee lying on the ground  lying toward the curb. The truck accelerated toward him, and I saw him discharge his pistol one time; and the truck by then was almost to the corner of Wood and Ash... .
At the close of the prosecution's case-in-chief, Harris moved for a directed verdict on the ground that the State failed to prove that Harris knew that the person who was struck was a police officer, a necessary element of the charge against him. The circuit court overruled this motion and Harris then testified on his own behalf as the only witness in his case-in-chief. His theory of the case was that his co-worker, Eric Lawson, paid him two dollars ($2.00) to drive him to Ash Street to buy some marijuana and, that while there his truck struck Lee, but that, he didn't see Lee before hitting him nor did he know that Lee was a police officer. Harris admitted that he turned his head around and saw the blue lights of a police car approach him from the rear, and that he saw numerous individuals running toward him, but he stated that he did not know they were police officers approaching him from the front. In fact, he saw "about eight to nine guys" running toward him and he thought that they were going to rob him "or something." Harris stated that he did not veer into the wrong lane to hit Lee, that he was parked on the wrong side of the street.
Harris stated that after he heard noise, he turned around and saw the police light, panicking, he "took off." He stated that he "heard something go `Boom'", he stopped, heard a gun shot, and then drove off again.
*1327 Following Harris' testimony, the State called three rebuttal witnesses. One of the rebuttal witnesses was Eric Lawson, the co-worker that was in the truck with Harris on August 10, 1989. Eric testified that the truck was in the proper lane while the drug deal was being discussed and that Harris veered into the wrong lane to hit Lee. However, on other matters, Eric surprised the State by testifying that he lied in earlier statements to questions asked by both the police officers and the district attorney.
At the close of the state's rebuttal case, Harris renewed the motion for a directed verdict. The court denied the motion. Thereafter, the jury returned guilty verdict for the lesser included offense of aggravated assault. Harris was sentenced to serve five years in the custody of the Mississippi Department of Corrections. As a first time offender, five years were suspended and he was placed on supervised probation for three years. Following a denial of his motion for judgment notwithstanding the verdict, or in the alternative for a new trial, Harris appeals.

II.
Harris assigns a single error, that the state failed to prove that he intended to cause serious injury to Lee. He correctly contends that in order to prove that he attempted to injure Lee, the State was required to prove that he intended to do so. Pruitt v. State, 528 So.2d 828 (Miss. 1988)
The crime of attempt consists of three elements: 1) an intent to commit a particular crime; 2) a direct ineffectual act done toward its commission, and 3) failure to consummate its commission. Edwards v. State, 500 So.2d 967, 969 (Miss. 1986). See also, Bucklew v. State, 206 So.2d 200, 202 (Miss. 1968)
Id. at 830. His argument fails because the evidence adduced was such that fair-minded jurors might reach different conclusions as to the issue of intent. Benson v. State, 551 So.2d 188, 193 (Miss. 1989).
The undisputed testimony is that Harris did, in fact, strike Lee. Disputed testimony supports the conclusion that he left his lane of travel to do so. At least one description of the event is consistent with an attempt to run over Lee a second time, an attempt averted only by Lee's rolling away from harm. That Harris gave testimony to the effect that he never intended to run over any person and was unaware that he had was a matter for evaluation by the jury. Thames v. State, 221 Miss. 573, 577, 73 So.2d 134 (1954) ("Intent, being a state of mind is rarely susceptible of direct proof, but ordinarily must be inferred from the acts and conduct of the party and the facts and circumstances attending them... ."). The assignment of error is without merit.

III.
In the interest of the fair administration of justice, however, we are constrained to note an error in the proceedings so that the bench and bar might avoid it in the future.
The problem begins with the indictment. It charges that Harris did "recklessly attempt" to cause serious bodily injury. This is an unfortunate perversion of our aggravated assault statute which prescribes that one is guilty thereof
if he (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm... .
Code 1972, § 97-3-7(2) (Supp. 1994).
As can be readily seen, one violates the statute by simply attempting to cause serious bodily injury. One also violates the statute when one causes serious bodily injury either intentionally or "recklessly under circumstances manifesting extreme indifference to the value of human life." The indictment mixes the concept of attempt which, as noted hereinabove, embraces the element of intent, with the concept of actually causing injury through recklessness, which requires no specific intent. The indictment goes on to specify the exact conduct charged and, therefore, standing alone, is salvageable.
*1328 The jury instructions were drafted in conformity with the indictment, however, and contained the phrase "recklessly attempt." This phrase was, in turn, used as a spring board for the prosecutor to argue that the jury need not find an intent to run over Lee in order to find Harris guilty of attempting to run him over. An objection to that argument was erroneously overruled.
Many courts have recognized "`intentional' and `reckless' are inconsistent terms." Stennett v. State, 564 So.2d 95, 96 (Ala. Crim. App. 1990), citing People v. Zimmerman, 46 A.D.2d 725, 360 N.Y.S.2d 127, 128 (1974); People v. Jackson, 49 A.D.2d 680, 370 N.Y.S.2d 739 (1975); People v. Brown, 21 A.D.2d 738, 249 N.Y.S.2d 922, 923 (1975); State v. Johnson, 103 N.M. 364, 707 P.2d 1174, 1178 (N.M.App. 1985); Commonwealth v. Hebert, 373 Mass. 535, 368 N.E.2d 1204, 1206 (1977); Rhode v. State, 181 Ind. App. 265, 391 N.E.2d 666, 669 (1979); State v. Melvin, 49 Wis.2d 246, 181 N.W.2d 490, 492 (1970); Hull v. State, 553 S.W.2d 90, 94 (Tenn. App. 1977); Bailey v. State, 100 Nev. 562, 688 P.2d 320, 321 (1984); State v. Howard, 405 A.2d 206, 212 (Me. 1979); Gonzales v. State, 532 S.W.2d 343, 345 (Tex. App. 1976); State v. Almeda, 189 Conn. 303, 455 A.2d 1326 (1983); People v. Hernandez, 44 Colo. App. 161, 614 P.2d 900 (1980); People v. Broussard, 76 Cal. App.3d 193, 142 Cal. Rptr. 664 (1977); Merritt v. Commonwealth, 164 Va. 653, 180 S.E. 395 (1935); Commonwealth v. Griffin, 310 Pa.Super. 39, 456 A.2d 171 (1983); State v. Zupetz, 322 N.W.2d 730 (Minn. 1982); and Smith, Two Problems in Criminal Attempts, 70 Harv.L.Rev. 422, 434 (1957). See also Arizona v. Kiles, 175 Ariz. 358, 857 P.2d 1212 (1993) (Defendant could not have been convicted of reckless behavior because attempt is a specific intent crime and by definition involved intentional conduct.)
Those terms are mutually exclusive when applied to the statute here in question. Miss. Code Ann. 1972 § 97-3-7(2) (Supp. 1991). The indictment, instruction and argument were erroneous. Harris failed to object to the indictment and the instruction and the argument was based on those instruments. He has also failed to assign the error for purposes of appeal. We decline to apply plain error and affirm.
CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF FIVE (5) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIVE (5) YEARS SUSPENDED, AFFIRMED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
McRAE, J., not participating.