ROBERTS, J.,
for the Court:
¶ 1. On March 12, 2013, a jury in the Copiah County Circuit Court convicted Kevin Leigh Williams of failing to register as a sex offender. He was sentenced to serve three years in the custody of the Mississippi Department of Corrections (MDOC). Following the denial of his post-trial motions, Williams appeals his conviction and sentence, primarily on the ground that his indictment was insufficient, as it did not allege the essential elements of the crime or the facts constituting the offense. We agree. Therefore, we reverse Williams’s conviction and sentence. Williams’s indictment is dismissed.
FACTS AND PROCEDURAL HISTORY
¶ 2. Williams was indicted by a Copiah County grand jury on January 30, 2013. The indictment read that Williams,
on or about the 4th day of September, 2012, in Copiah County, Mississippi, ... did then and there wilfully, unlawfully[,] and feloniously fail to register or re-register as a sex offender with the Department of Public Safety, contrary to and in violation of [Mississippi Code Annotated sjection 45-33-33 [(Rev.2011)] ..., and against the peace and dignity of the State of Mississippi.
¶ 3. At Williams’s trial on March 12, 2013, two witnesses testified for the State, and the defense put on no witnesses or evidence. Testifying first for the State was Officer Greg Farrell, who was employed by the MDOC as a field officer in Copiah County for probation and parole compliance. Officer Farrell testified that he met Williams on September 5, 2012, after supervision of Williams was transferred to him in Copiah County from another county. According to Officer Farrell, Williams signed several documents at their meeting at his office, and he provided Officer Farrell with an address that he said belonged to him and his brothers. *934 Only an Acknowledgment of Convicted Sex Offender’s Duty to Register form was entered into evidence, and this form does not contain a date that it was signed or the address Williams provided. The form contained a sixteen-part list of the various duties required of sex offenders relating to registration. No other documents from their meeting were entered into evidence.
¶4. On September 10, 2012, Officer Farrell went to the address provided; however, Williams was not there.[1] Officer Farrell never went inside the home, and was not aware if anyone else was in the home that day. Following his visit, Officer Farrell completed a violation report and forwarded it to Williams’s county of conviction.[2] The violation report was not entered into evidence. Officer Farrell also notified Copiah County Sheriffs Department Investigator Tommy Roberts of a possible sex-offender violation to investigate.
¶ 5. .Investigator Roberts next testified at Williams’s trial. Investigator Roberts testified that Williams signed an acknowledgment-of-duties form and that the first duty listed was that Williams would need to report all the addresses where he would reside for a period of seven or more consecutive days. After receiving information from Officer Farrell, Investigator Roberts also went to the address Williams provided and spoke with Chris. Chris told Investigator Roberts that Williams did not live there. Investigator Roberts testified that he first went to the home on September 4, 2012, and again on September 18, 2012.[3] On his September 18, 2012 visit, Investigator Roberts, wearing a video camera, went to the address and again spoke with Chris. The video was shown to the jury, over defense counsel’s objection that the date and time on the video were incorrect; therefore, it could not be authenticated. Chris informed Investigator Roberts that Williams was not present. The State rested. Williams did not testify or offer any other evidence.
¶ 6. The jury convicted Williams of failing to register or reregister as a sex offender, and he was sentenced to serve three years in the custody of the MDOC. Williams filed a motion to set aside his sentence and for a judgment notwithstanding the verdict, and a motion for a new trial. His motions were denied, and Williams appeals. He raises three issues on appeal:
I. The indictment was fatally defective, as it failed to allege the elements of the crime or the essential facts constituting the offense.
II. The trial court committed plain error by failing to instruct the jury on the essential elements of the crime.
III. The evidence is insufficient to support the verdict or, in the alterna *935 tive, the verdict is against the overwhelming weight of the evidence.
ANALYSIS
¶ 7. “The question of whether an indictment is fatally defective is an issue of law and deserves a relatively broad standard of review by this Court.... [T]he legal sufficiency of an indictment must be reviewed de novo.” Young v. State, 119 So.3d 309, 313 (¶ 10) (Miss.2013) (citations omitted).
¶ 8. We note that Williams raised the issue of the legal sufficiency of his indictment for the first time on appeal. That State argues that this acts as a waiver, and Williams is procedurally barred from raising this issue on appeal. However, it is settled that objections to the sufficiency of an indictment may be raised for the first time on appeal. See Tucker v. State, 47 So.3d 135, 137 (¶ 8) (Miss.2010); Ross v. State, 954 So.2d 968, 1015 (¶ 126) (Miss.2007); Havard v. State, 928 So.2d 771, 801 (¶ 59) (Miss.2006); State v. Berryhill, 703 So.2d 250, 254 (¶ 16) (Miss.1997); Copeland v. State, 423 So.2d 1333, 1336 (Miss.1982).
¶ 9. Uniform Rule of Circuit and County Court 7.06 provides that an indictment “shall be a plain, concise[,] and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation.” The primary purpose of an indictment is to give a defendant fair notice of the crime charged. Hines v. State, 126 So.3d 985, 987 (¶ 10) (Miss.Ct.App.2013) (quoting Faulkner v. State, 109 So.3d 142, 146 (¶ 13) (Miss.Ct.App.2013)). “An indictment must contain (1) the essential elements of the offense charged, (2) sufficient facts to fairly inform the defendant of the charge against which he must defend, and (3) sufficient facts to enable him to plead double jeopardy in the event of a future prosecution for the same offense.” Gilmer v. State, 955 So.2d 829, 836-37 (¶ 24) (Miss.2007) (citing Hamling v. United States, 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974)). “[E]ach and every material fact and essential ingredient of the offense must be with precision and certainty set forth.” Burchfield v. State, 277 So.2d 623, 625 (Miss.1973).
¶ 10. Williams’s indictment, quoted in almost its entirety, read:
Kevin Leigh Williams, ... on or about the 4th day of September, 2012, in Copi-ah County, Mississippi, ... did then and there wilfully, unlawfullyf,] and felo-niously fail to register or re-register as a sex offender with the Department of Public Safety, contrary to and in violation of [Mississippi Code Annotated section 45-33-33 ..., and against the peace and dignity of the State of Mississippi.
Section 45-33-33 provides:
(l)(a) The failure of an offender to personally appear at a Department of Public Safety Driver’s License Station or to provide any registration or other information, including, but not limited to, initial registration, reregistration or change of address information, change of employment, change of name or required notification to a volunteer organization, as required by this chapter, is a violation of the law. Additionally, forgery of information or submission of information under false pretenses is also a violation of the law.
(b) A person commits a violation of this chapter who:
(i) Knowingly harbors, or knowingly attempts to harbor, or knowingly assists another person in harboring or attempting to harbor a sex of *936 fender who is in violation of this chapter; or
(ii) Knowingly assists a sex offender in eluding a law enforcement agency that is seeking to find the sex offender to question the sex offender about, or to arrest the sex offender for, noneompliance with the requirements of this chapter; or
(iii) Provides information to a law enforcement agency regarding a sex offender which the person knows to be false.
(2) Unless otherwise specified, a violation of this chapter shall be considered a felony and shall be punishable by a fine not more than Five Thousand Dollars ($5,000.00) or imprisonment in the State Penitentiary for not more than five (5) years, or both fine and imprisonment.
(3) Whenever it appears that an offender has failed to comply with the duty to register or reregister, the department shall promptly notify the sheriff of the county of the last-known address of the offender. Upon notification, the sheriff shall attempt to locate the offender at his last-known address.
(a) If the sheriff locates the offender, he shall enforce the provisions of this chapter. The sheriff shall then notify the department with the current information regarding .the offender.
(b) If the sheriff is unable to locate the offender, the sheriff shall promptly notify the department and initiate a criminal prosecution against the offender for the failure to register or reregister. The sheriff shall make the appropriate transactions into the Federal Bureau of Investigation’s wanted-person database and issue a warrant for the offender’s arrest. The department shall notify the United States Marshal Service of the offender’s non-compliant status and shall update the registry database and website to show the defendant’s noncompliant status as an absconder.
(4) A violation of this chapter shall result in the arrest of the offender.
(5) Any prosecution for a violation of this section shall be brought by a prosecutor in the county of the violation.
(6) A person required to register under this chapter who commits any act or omission in violation of this chapter may be prosecuted for the act or omission in the county in which the act or omission was committed, the county of the last registered address of the sex offender, the county in which the conviction occurred for the offense or offenses that meet the criteria requiring the person to register, or in the county in which he was designated a sex offender.
(7) The Commissioner of Public Safety or his authorized agent shall suspend the driver’s license or driving privilege of any offender failing to comply with the duty to report, register or reregis-ter, or who has provided false information.
(Emphasis added). We quote the statute in its entirety to show that there is a myriad of ways a person could violate the statute and chapter 33. Because there are innumerable ways to violate chapter 33, it is impossible to ascertain from Williams’s indictment the way in which he violated the chapter, since Williams’s indictment provides no specific facts, much less the essential facts, as to how he allegedly violated the chapter. For example, Mississippi Code Annotated section 45-33-29(1) (Rev.2011) provides that an offender must notify the Department of Public Safety of a change of address no less than ten days before he first resides at his new address. Mississippi Code Annotated section 45-33-31 (Rev.2011) details how an offender re-registers with the Department of Public *937 Safety. We simply cannot ascertain, from Williams’s indictment and the evidence presented at trial, the basis on which he was convicted. We do not know whether his conviction was for knowingly giving a false address upon registration; giving a proper address, but wilfully failing to reside at that address; or failing to personally appear before the Department of Public Safety Driver’s License Station to register or reregister. Moreover, if Williams was properly registered in his county of conviction, he was required to reregister in Copi-ah County a minimum of ten days before he actually moved there, pursuant to section 45-33-29(1). If that is the case, his absence from the residence on September 10, 2012, would have been of no significance. Without giving specific facts, Williams’s indictment provided no notice as to how he failed to register or reregis-ter as a sex offender as required by the provisions of chapter 33; thus, he could not have prepared a defense without knowing what act or omission he needed to defend. Additionally, the lack of factual specificity in his indictment exposes Williams to the possibility of again being prosecuted for the same action or inaction.
¶ 11. We find that Williams’s indictment is legally insufficient because of its failure to provide sufficient facts to properly notify Williams of the charge; therefore, we reverse his conviction and sentence and dismiss his indictment. This disposition is consistent with the Mississippi Supreme Court’s disposition in Thomas v. State, 126 So.3d 877, 880 (¶ 9) (Miss.2013), and this Court’s decision in Gales v. State, 131 So.3d 1238, 1240 (¶ 11) (Miss.Ct.App.2013). Because the issue of the sufficiency of Williams’s indictment is dispositive, we decline to address the remaining issues raised on appeal.
¶ 12. THE JUDGMENT OF THE CIRCUIT COURT OF COPIAH COUNTY OF CONVICTION OF FAILING TO REGISTER OR REREGISTER AS A SEX OFFENDER AND SENTENCE OF THREE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS REVERSED, AND THE INDICTMENT IS DISMISSED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COPIAH COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, MAXWELL, FAIR AND JAMES, JJ., CONCUR. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.

. Williams objected to Officer Farrell’s testimony that Williams’s brother, Chris, answered the door and told Officer Farrell that Williams was not residing at that address, and he had not seen him since September 4, 2012. His objection was sustained by the circuit judge.

. The record is devoid of any documents or information regarding Williams's underlying conviction or sentence. We do not know when Williams was convicted, the county or state of his conviction, or the sentence he received. Neither do we know whether Williams was properly registered in the county of his conviction.

.We note the inconsistencies as to the dates Officer Farrell and Investigator Roberts provided at trial. Officer Farrell testified that he did not even meet Williams until September 5, 2012, or go to the home until September 10, 2012; however, Investigator Roberts testified that he first went to the home on September^, 2012, after he heard of the possible violation from Officer Farrell.