# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-00705-COA

**DARRY DANIELS A/K/A DARRY LANIER DANIELS**                    APPELLANT

v.

**STATE OF MISSISSIPPI**                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 12/10/2020 |
| TRIAL JUDGE: | HON. BARRY W. FORD |
| COURT FROM WHICH APPEALED: | HUMPHREYS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES H. POWELL III |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAUREN GABRIELLE CANTRELL |
| DISTRICT ATTORNEY: | AKILLIE MALONE OLIVER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 05/09/2024 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**SMITH, J., FOR THE COURT:**

¶1.     After a two-day trial, a Humphreys County Circuit Court jury convicted Darry Daniels of one count of manslaughter as a lesser-included offense of murder, three counts of aggravated assault, and one count of shooting into an occupied dwelling. The jury acquitted Daniels of a remaining charge of attempted murder. On appeal, Daniels asserts that his indictment was legally insufficient as to the counts for murder and aggravated assault. He therefore contends that his conviction of manslaughter, as a lesser-included offense of

murder, and his three convictions of aggravated assault must be set aside.[1]

¶2.     Upon review, we find that the language omitted from Daniels's indictment in Count I for murder constituted harmless error. We therefore affirm Daniels's conviction for the lesser-included offense of manslaughter. As to Counts III, IV, and V, we find that the indictment was legally insufficient to charge Daniels with aggravated assault and that the jury instructions and the State's closing argument only served to compound the error. Thus, as to those three counts, we reverse Daniels's convictions and remand the matter to the circuit court for a new trial.

**FACTS**

¶3.     On the evening of June 24, 2019, Daniels began playing video games with a group of people at a residence in Belzoni, Mississippi. The home was owned by Mona Chapman, who lived with her two children and her boyfriend Telvin Washington. Jonshun Yarbor and Oriento Thompson were also at Chapman's home that night. The men were hanging out, smoking, writing songs, and playing video games throughout the evening and into the early morning hours of June 25, 2019.

¶4.     At some point, Daniels and Washington began playing the video game Mortal Kombat and decided to bet money on the outcome of their games. Washington grew suspicious that Daniels was cheating because Daniels won every game with ease. Washington ultimately discovered that Daniels's game controller was set on "easy" mode while Washington's controller was not. Upon making this discovery, Washington took all the money that had

_____

[1] On appeal, Daniels raises no argument challenging his conviction of shooting into an occupied dwelling.

been wagered on the games and counted it. Washington attempted to return (to Daniels) the money that Daniels had wagered on the games. According to Yarbor, Daniels refused to take the money Washington offered because Daniels wanted all the money he had won on the video games. Washington told Daniels to leave the house. Daniels initially refused but eventually left after Washington pulled out a gun. According to Thompson, Daniels stated before he left that he would be back to "shoot up the house" and that he did not care who was there.

¶5.     Shortly after Daniels left, he began a Facebook Live video and ranted about how Washington had mistreated him. Daniels stated on the video that Washington had ten minutes to meet him at a specific neighborhood to settle the dispute. Otherwise, Daniels threatened to return to Chapman's residence and shoot up the house. Aware of Daniels's threats on Facebook Live, Yarbor, Washington, and Thompson went outside Chapman's house.[2] When they saw Daniels approaching in his vehicle, Yarbor testified that Washington fired three or four shots.[3] After Washington fired his weapon, all three men ran back into the house.

¶6.     After Washington and the others returned inside the house, Daniels started a second Facebook Live video as he approached Chapman's house. The video showed Daniels pointing his gun at Chapman's house and firing multiple times. One of the bullets Daniels

_____

[2] The record contained conflicting evidence as to whether the three men walked outside to the yard or only into the garage.

[3] The evidence was also conflicting as to whether Washington fired in the direction of Daniels's car or into the air.

shot went through the home's front door and struck Washington in the chest. Washington later died as a result of his injury. A bullet shot from Daniels's gun also struck Yarbor in the arm. Law enforcement quickly apprehended Daniels as he drove his vehicle toward Louisiana.

¶7. Following its deliberations, the jury convicted Daniels of one count of manslaughter for Washington's death, three counts of aggravated assault against Thompson and each of Chapman's two children, and one count of shooting into an occupied dwelling. The circuit court sentenced Daniels to serve a term of twenty years in custody for his manslaughter conviction. For each of the three aggravated-assault convictions, the circuit court sentenced Daniels to twenty years in custody, with ten years suspended and ten years to serve, and five years of post-release supervision. The circuit court sentenced Daniels to ten years in custody for his conviction of shooting into an occupied dwelling. The circuit court fined Daniels $5,000 and ordered that his sentences for manslaughter and shooting into an occupied dwelling run concurrently with one another. The circuit court further ordered that Daniels's three aggravated-assault sentences run concurrently with one another but consecutively to the manslaughter sentence.

¶8. Daniels filed a motion for post-conviction collateral relief (PCR) seeking permission to file an out-of-time direct appeal from his convictions, which the circuit court granted. On appeal from his judgment of convictions and sentencing for manslaughter and the three counts of aggravated assault, Daniels challenges the legal sufficiency of the indictment relative to those charges.

4

**DISCUSSION**

¶9. Daniels argues that his indictment was fatally defective as to the murder charge in Count I and the aggravated assault charges in Counts III, IV, and V. Daniels further argues that his convictions as to those counts must be set aside and finally dismissed. "Whether an indictment is defective is an issue of law and . . . deserves a relatively broad standard of review, or de novo review." *Beale v. State*, 361 So. 3d 673, 677 (¶¶13-14) (Miss. Ct. App. 2022) (quoting *Morton v. State*, 246 So. 3d 895, 902 (¶13) (Miss. Ct. App. 2017)).

¶10. In response to Daniels's arguments, the State contends that Daniels fails to cite any supporting authority and that this Court therefore should decline to address his arguments on appeal. We find, however, that Daniels cites authority for his contention that the sufficiency of the indictment may be raised for the first time on appeal. *See Tucker v. State*, 47 So. 3d 135, 137-38 (¶8) (Miss. 2010); *Ross v. State*, 954 So. 2d 968, 1015 (¶126) (Miss. 2007); *Havard v. State*, 928 So. 2d 771, 800-01 (¶59) (Miss. 2006); *see also Body v. State*, 318 So. 3d 1104, 1113 n.3 (Miss. 2021). Daniels supports his claims regarding the indictment's legal sufficiency by citing Mississippi Rule of Criminal Procedure 14.1, which states in relevant part:

> The indictment upon which the defendant is to be tried shall be a plain, concise and definite written statement of the essential facts and elements constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation. Formal and technical words are not necessary in an indictment, if the offense can be substantially described without them.

Thus, upon review, we will address Daniels's assigned errors on the merits.

**I.    Manslaughter Conviction**

5

¶11.    Count I of Daniels's indictment for murder stated:

> Darry Daniels[,] on or about the 24th day of June, 2019, in Humphreys County, did unlawfully, feloniously, and willfully with deliberate design to effect the death of Telvin Ray Washington without the authority of law in violation of Section 97-3-19 of the Mississippi Code of 1972, as amended, against the peace and dignity of the State of Mississippi.

¶12.    On appeal, Daniels argues that Count I "simply fails to allege that a murder or killing of any human being occurred. Because of that omission[,] Daniels'[s] conviction of the lesser[-]included offense of manslaughter in Count I of the indictment should be set aside and the charge finally dismissed." As Daniels notes, Count I of the indictment omitted that Daniels "killed" or "murdered" Washington. We agree with the State's argument, however, that the omission "made Daniels's indictment for first-degree murder defective [but] was not fatal." Despite the omission, we find that Daniels still had "a fair and adequate opportunity to prepare for and defend against" the indicted charge. *Tran v. State*, 962 So. 2d 1237, 1241 (¶16) (Miss. 2007).

¶13.    In *Tran*, the defendant asserted that his indictment for money laundering failed to disclose the specific "unlawful activity" that allegedly produced the money at issue. *Id.* at 1240 (¶12). In addressing Tran's argument about his indictment's legal insufficiency, the Mississippi Supreme Court recognized that the purpose of an indictment's notice requirement "is to ensure that criminal defendants have a fair and adequate opportunity to prepare for and defend against the charges brought against them by the government." *Id.* at 1241 (¶16). The supreme court agreed with Tran that his indictment was defective because it "inform[ed] him of neither the specific acts which make up the crime[] nor the nature of the crime itself." *Id.*

6

at 1246 (¶34).

¶14. Despite finding Tran's indictment to be defective, the supreme court noted that "[f]ew, if any, prosecutions have been perfect, and there can be errors—even errors of constitutional proportions—which do not require reversal of a conviction." *Id.* at (¶36). The supreme court conducted a harmless-error analysis and reviewed the record de novo to fully assess if the indictment violated Tran's ability to adequately defend himself against the indicted charge. *Id.* at 1247 (¶¶37-38). Due to the "abundance of evidence in the record that Tran had *fair notice* and an *opportunity to prepare a defense*," the supreme court declined to reverse his money-laundering conviction. *Id.* at 1248 (¶43) (emphasis added).

¶15. As the supreme court noted, the abundant evidence demonstrating that Tran had received ample notice of the specific unlawful activity referenced in his indictment included the following: (1) the civil forfeiture action that occurred prior to Tran's indictment for money laundering; (2) Tran's affidavit admission that officers had attempted to elicit information during his interrogation that the money was used for drugs; (3) Tran's two separate motions requesting relief in which he acknowledged that the subject money had been seized under the Mississippi Controlled Substances Act; and (4) the State's disclosure during a suppression hearing, without any objection from Tran regarding unfair notice or inadequate time to prepare a defense, that State intended to call an expert witness in narcotics and the proceeds of drug trafficking. *Id.* at 1247-48 (¶¶39-41).

¶16. Importantly, like *Tran*, Daniels raised no objection to his indictment until after his conviction and sentencing. And although on appeal Daniels challenges the legal sufficiency

7

of his indictment, he fails to allege that his indictment provided unfair notice, inadequate information, or insufficient time to prepare a defense. Moreover, as in *Tran*, the abundance of record evidence before this Court refutes any concern that the omission in Daniels's indictment failed to provide adequate notice of the first-degree murder charge against him or an adequate opportunity to prepare a defense to that charge. Rather, as the record clearly reflects, not only did Daniels have adequate notice and the opportunity to present his defense, but he did so successfully, as evidenced by his conviction of the lesser-included offense of manslaughter.

¶17. The face of Daniels's indictment provided adequate notice of his charge for first-degree murder. The heading for Count I of the indictment explicitly stated "MURDER" in bold print, and the body of Count I referenced Mississippi Code Annotated section 97-3-19 (Supp. 2017), which is the Mississippi statute that sets out the crimes of murder. In addition, Count I of Daniels's indictment explicitly stated that Daniels had acted "with deliberate design to effect the death" of Washington, and as section 97-3-19(1)(a) explains, first-degree murder is accomplished "with deliberate design."

¶18. Moreover, just as in *Tran*, Daniels's pretrial proceedings and the State's discovery disclosures provided additional evidence of fair notice regarding Daniels's first-degree-murder charge. Daniels personally signed two affidavits of indigency stating he had been charged with "murder" under section 97-3-19. Daniels was also served with a capias that stated he had been charged with "murder." And in his request to the circuit court for a trial continuance, which he filed after receiving his indictment and well before his trial, Daniels

8

specifically informed the circuit court that he had been "charged with [m]urder in count one" and "could be sentenced to life in prison without the eligibility of parole."

¶19. In addition, the State's discovery disclosures to Daniels included the following: crime-scene reports, photographs, and video footage; witness statements; the gun Daniels had used to commit the crime; the bullets recovered from the crime scene; the crime laboratory's report on the bullets; Washington's autopsy report and photographs; and Daniels's Facebook Live video of the shooting.

¶20. Based on the record before us, we follow the supreme court's holding in *Tran* and conclude that the defect in Count I of Daniels's indictment for first-degree murder constituted harmless error because the State "demonstrate[d] that it otherwise provided timely notice" to Daniels of the charge against him and "that the notice clearly and sufficiently provided [Daniels] a fair opportunity to prepare a defense to the charge[]." *Tran*, 962 So. 2d at 1248 (¶45). Thus, as to Count I of the indictment, we affirm Daniels's conviction and sentence for manslaughter, as a lesser-included offense of murder.

## II. Aggravated-Assault Convictions

¶21. Daniels also claims that Counts III, IV, and V of the indictment failed to allege the essential elements of aggravated assault. Daniels argues that the indictment "improperly combine[d] the elements of an attempt to cause serious bodily injury with the elements required where actual injury is caused by actions of the defendant manifesting an extreme indifference to the value of human life." According to Daniels, "one cannot attempt to cause serious bodily injury and at the same time recklessly cause it." In addition, Daniels contends

9

that because only one bullet entered Chapman's home, and since that single bullet struck both Washington and Yarbor, it was impossible for Daniels to have committed the alleged offenses contained in Counts III, IV, and V.

¶22. Although we address the issue of the indictment's legal sufficiency, we agree with the State that Daniels fails to cite any supporting authority or make any meaningful argument to support his "one bullet" challenge to the legal sufficiency of the evidence. Therefore, that portion of Daniels's argument is procedurally barred from consideration on appeal. *See Friley v. State*, 366 So. 3d 959, 966-67 (¶25) (Miss. Ct. App. 2023); *accord* M.R.A.P. 28(a)(7).

¶23. The State further argues that Daniels's attack upon the language in Counts III, IV, and V of the indictment involves non-jurisdictional defects that cannot be raised for the first time on appeal "absent a showing of cause and actual prejudice." *See Dartez v. State*, 271 So. 3d 733, 739 (¶18) (Miss. Ct. App. 2018). This Court previously has found, however, that the failure to properly charge an element of the crime is jurisdictional.

¶24. In *Maggett v. State*, 230 So. 3d 722, 728 (¶16) (Miss. Ct. App. 2016), we explained:

> This objection to the indictments was not raised before the trial court. Nonjurisdictional defects in the indictment may not be attacked for the first time on appeal absent a showing of cause and actual prejudice. Mississippi law recognizes only two such jurisdictional defects: where the indictment fails to charge a necessary element of a crime or if there exists no subject matter jurisdiction.

(Citations and internal quotation mark omitted). Thus, on appeal, we may properly consider whether Daniels's indictment charged the essential elements of aggravated assault.

¶25. Count III of Daniels's indictment provided that

10

> Darry Daniels[,] on or about the 24th day of June, 2019, in Humphreys County, Mississippi, did willfully, feloniously and unlawfully attempt to cause serious bodily injury to Oriento Thompson recklessly under circumstances manifesting extreme indifference to the value of human life by shooting at him with a deadly weapon in violation of Mississippi Code 97-3-7(2)(a)(i) (1972), as amended, against the peace and dignity of the State of Mississippi.

Upon reading Count III of the indictment, we find the charging language for aggravated assault erroneously conflated the elements of an "attempt to cause serious bodily injury" with the elements of actually "causing" serious bodily injury by acting "recklessly under circumstances manifesting extreme indifference to the value of human life."

¶26. The error within the indictment was continued in the instructions given to the jury, which read as follows:

> The defendant, Darry Daniels, has been charged in Count III of the indictment with the crime of Aggravated Assault.
>
> If you believe, from all of the evidence in this case, beyond a reasonable doubt that:
>
> 1. On or about the 25th day of June, 2019[,] in Humphreys County, Mississippi;
>
> 2. the defendant, did unlawfully, willfully, feloniously, purposely, or knowingly attempt to cause serious bodily injury to Oriento Thompson[;]
>
> 3. by recklessly, under circumstances manifesting extreme indifference to the value of human life, shooting at Oriento Thompson with a deadly weapon;
>
> then, Darry Daniels is guilty of Aggravated Assault in Count III.
>
> If the State of Mississippi failed to prove any one or more [of] the above listed elements[,] then you shall find the defendant, Darry Daniels[,] not guilty in Count III.

¶27. Except for the victims' names, the language in Counts IV and V of the indictment was identical to the language in Count III. In addition, the language of the jury instructions given for Counts IV and V was identical to that of the jury instruction given for aggravated assault in Count III. Moreover, in its closing argument, the State compounded the error by telling the jury:

> So the aggravated assault, the key element that we have to prove is that this happened by recklessly under circumstances manifesting extreme indifference to the value of human life. Ladies and gentlemen, Darry Daniels was acting real reckless that day.

¶28. In *Harris v. State*, 642 So. 2d 1325 (Miss. 1994), the supreme court addressed a nearly identical situation and stated that "the indictment, the primary jury instruction, and closing argument of the prosecutor[] misconstrued our aggravated[-]assault statute by asserting an *oxymoronic 'reckless attempt'* in both the indictment and instruction and then arguing that no finding of intent was required." *Id*. at 1325 (emphasis added). Although Harris's conviction was affirmed on appeal,[4] the supreme court felt compelled "to note [the] error in the proceedings so that the bench and bar might avoid it in the future." *Id.* at 1327.

¶29. As a result, the *Harris* court stated the following:

> [O]ne violates the statute by simply attempting to cause serious bodily injury. One also violates the statute when one causes serious bodily injury either intentionally or "recklessly under circumstances manifesting extreme indifference to the value of human life." The indictment mixes the concept of attempt which, as noted . . . [above], embraces the element of intent, with the concept of actually causing injury through recklessness, which requires no specific intent. The indictment goes on to specify the exact conduct charged

---

[4] The *Harris* court affirmed the conviction because the defense objected to neither the indictment nor the instructions at trial, and the defendant failed to raise those issues as errors on appeal.

and, therefore, standing alone, is salvageable.

The jury instructions were drafted in conformity with the indictment, however, and contained the phrase "recklessly attempt." This phrase was, in turn, used as a spring board for the prosecutor to argue that the jury need not find an intent to run over [the victim] in order to find Harris guilty of attempting to run him over. An objection to that argument was erroneously overruled.

Many courts have recognized "'intentional' and 'reckless' are inconsistent terms." *Stennett v. State*, 564 So. 2d 95, 96 (Ala. Crim. App. 1990) . . . .

Those terms are mutually exclusive when applied to the statute here in question. Miss. Code Ann. § 97-3-7(2) (Supp. 1991). The indictment, instruction and argument were erroneous. Harris failed to object to the indictment[,] and the instruction and the argument was based on those instruments. He has also failed to assign the error for purposes of appeal.

*Id.* at 1327-28.

¶30. Despite the supreme court's clear warning in *Harris*, the same issue arose again in *Morris v. State*, 748 So. 2d 143, 144 (¶¶1-2) (Miss. 1999), when Morris appealed his convictions of two counts of aggravated assault. The indictment in each count charged that Morris "'did wilfully, unlawfully and feloniously, purposely, knowingly or *recklessly*, under circumstances manifesting extreme indifference to the value of human life, *attempt* to cause bodily injury' to [the victims] by swerving his car at their patrol car." *Id.* at 146 (¶9). Just as in *Harris*, the jury instructions in *Morris* contained the "purposely, knowingly or *recklessly attempt*" language. *Id.* Although Morris raised no objection at trial to the indictment or the State's jury instructions on the elements of the charge, he did offer his own instructions on the element of intent. *Id.* at 145-46 (¶8). On appeal, Morris argued that the trial court had misinterpreted the elements of the charge against him in both the indictment and the jury instructions. *Id.* at 144 (¶2). The supreme court found that Morris's offering of

13

jury instructions at trial on the element of intent had sufficiently preserved the issue for appeal. *Id.* at 146 (¶8).

¶31. In reversing Morris's aggravated-assault convictions, the supreme court emphasized its warning from *Harris* "against use of the 'recklessly attempt' language in jury instructions and indictments defining the elements of aggravated assault." *Id.* at (¶10) (quoting *Harris*, 642 So. 2d at 1327-28). The *Morris* court stated:

> As we explained in *Harris*, the definition of attempt precludes its application to the portion of the aggravated[-]assault statute defining aggravated assault as causing serious bodily injury to another recklessly under circumstances manifesting extreme indifference to the value of human life, because one may not act intentionally and recklessly at the same time.
>
> . . . .
>
> Based upon the holding in *Harris*, we find that the entire trial in this case erroneously turned on an improper interpretation of the elements of attempted aggravated assault. The indictment and jury instructions incorrectly listed the elements of the charge in this case. The questioning at trial and the prosecutor's closing argument tracked that improper interpretation of the law, focusing on reckless rather than intentional conduct. This resulted in the denial of due process, requiring reversal in this case.

*Id.* at 146-47 (¶¶11, 15) (citation and internal quotation mark omitted).

¶32. The supreme court's holding in *Harris* seems to indicate that under similar circumstances, the erroneous indictment might be salvaged if followed by a proper jury instruction. *See Harris*, 642 So. 2d at 1327-28. In the present case, however, the given jury instructions failed to cure the problem with Daniels's indictment. The State's argument then compounded the statutory misinterpretation by telling the jurors that they did not need to find Daniels had possessed intent to cause serious bodily injury to the victims in Counts III, IV,

14

and V.

¶33.    Upon review, we find that Counts III, IV, and V of the indictment were legally insufficient because they failed to provide Daniels with a "plain, concise and definite written statement of the essential facts and elements constituting the offense" of aggravated assault. MRCrP 14.1(a)(1).  In effect, the indictment alleges two conflicting intent elements for aggravated assault, and the jury instructions and the State's closing argument only served to compound the error rather than to remedy it.  As in *Morris*, we find that the error propagated throughout Daniels's trial amounted to a due process violation that requires reversal. *Morris*, 748 So. 2d at 144 (¶2).  We therefore reverse Daniels's three convictions for aggravated assault and remand the matter to the circuit court for a new trial on those charges.

**CONCLUSION**

¶34.    After reviewing the record de novo, we affirm Daniels's conviction and sentence for manslaughter, as a lesser-included offense of murder.  As to Counts III, IV, and V of Daniels's indictment for aggravated assault, we reverse those convictions and remand to the circuit court for a new trial.

¶35.    **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**GREENLEE, McDONALD AND LAWRENCE, JJ., CONCUR. WESTBROOKS, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD, LAWRENCE AND SMITH, JJ. EMFINGER, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, C.J., CARLTON AND WILSON, P.JJ., AND McCARTY, J.**

**WESTBROOKS, J., SPECIALLY CONCURRING:**

¶36.    I concur with the lead opinion.  However, I write separately to accentuate the

15

inconsistencies in our Court's previous rulings regarding insufficiency of indictments. "The 'purpose of an indictment is to provide the accused reasonable notice of the charges against him so that he may prepare an adequate defense.'" *Johnson v. State*, 94 So. 3d 1209, 1215 (¶26) (Miss. Ct. App. 2011) (quoting *Brawner v. State*, 947 So. 2d 254, 265 (¶31) (Miss. 2006)). "In order for an indictment to be legally sufficient, it must, among other things, contain all the essential elements of the crime charged. The essential elements of murder are that: (1) the defendant killed the victim, (2) without authority of law, and (3) with deliberate design to effect his death." *Mangum v. State*, 64 So. 3d 503, 503 (¶1) (Miss. Ct. App. 2010).

¶37. Mississippi Rule of Criminal Procedure 14.1 reads in part:

(a) **Contents Generally.**

(1) *Elements and Notice*. The indictment upon which the defendant is to be tried shall be a plain, concise and definite written statement of the essential facts and elements constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation. **Formal and technical words are not necessary in an indictment, if the offense can be substantially described without them**.

(Emphasis added). Moreover, the Mississippi Supreme Court has held:

It is not essential, in an indictment for a statutory crime, that the exact descriptive language of the statute be used. Equivalent words of substantially the same meaning as those of the statute may be substituted. Where the language used in the indictment is sufficiently specific to give notice of the act made unlawful, and exclusive enough to prevent[] its application to other acts, it is sufficient.

*Price v. State*, 898 So. 2d 641, 654 (¶32) (Miss. 2005).

¶38. Further, we have held in this Court in more than one instance that even though an indictment is missing some of the direct language of an essential element, so long as the

indictment provides sufficient notice of the charge against the defendant, it is not fatally defective. *E.g.*, *Davis v. State*, 171 So. 3d 537, 540 (¶11) (Miss. Ct. App. 2015). Typically, the rationale is that "[s]o long as from a fair reading of the indictment, *taken as a whole*, the nature and cause of the charge against the accused are clear, the indictment is legally sufficient." *Id*. (emphasis added).

¶39.    In a recent case, a defendant argued that each count of his indictment charging him with accessory after that fact to a felony "fail[ed] to allege the essential element of the crime that [he] acted 'with the intent to enable such felon to escape or avoid arrest, trial, conviction or punishment after the commission of such felony.'" *Wakefield v. State*, No. 2021-KA-00187-COA, 2023 WL 2489444, at *12 (¶61) (Miss. Ct. App. Mar. 14, 2023), *aff'd*, 2024 WL 1321344 (Miss. Mar. 28, 2024). In this case, we found that even though the term "intent" was missing from the indictment, it did include the term "willfully," which was sufficient to provide him with notice of the charges against him. *Id*. at (¶63). We also held that "Wakefield ha[d] not identified any prejudice in the presentation of his defense resulting from the wording in the indictment." *Id*.

¶40.    In another case, this Court held the same thing when a defendant "argued that his indictment was fatally defective for failing to allege an essential element of the charged crime – intent." *Lyles v. State*, 12 So. 3d 532, 539 (¶21) (Miss. Ct. App. 2009). As in *Wakefield*, in *Lyles* we held that "[w]hile the word 'intent' is not specifically used in [the] indictment, it does contain the term 'wilfully.'" *Id*.

¶41.    In another case, a defendant argued that the indictment was ambiguous due to the

17

failure to include the word "serious" as a modifier for the phrase "bodily injury" because it denied him notice of whether he was being charged with a felony or misdemeanor. *Caston v. State*, 949 So. 2d 852, 855 (¶6) (Miss. Ct. App. 2007). We held that the defendant was provided with reasonable notice of the charges he was facing due to the indictment caption that read "INDICTMENT FOR THE OFFENSE OF VEHICULAR HOMICIDE AND AGGRAVATED ASSAULT (TWO COUNTS)." *Id*. at 858 (¶13). This Court also found that because the indictment included the "specific subsection under which the accused was being charged [it] provided actual notice to the defendant sufficient to satisfy the post-rules standard." *Id*.

¶42. In another case, this Court acknowledged that even though certain language was missing, both the heading and the body of the indictment identified which crime and statutory section a defendant was being charged under. *Townsend v. State*, 188 So. 3d 616, 620 (¶16) (Miss. Ct. App. 2016). In *Townsend*, this Court held that "[a] reading of the indictment as a whole gave the defendant fair notice of the charge against him so he could prepare an adequate defense and avoid unfair surprise or the threat of double jeopardy." *Id.* The holding by this Court in *Townend* was consistent with the holdings of our Court as well as the Mississippi Supreme Court. *Gilmer v. State*, 955 So. 2d 829, 836-37 (¶¶24-26) (Miss. 2007) ("[A]s the statute assigns to the language in the indictment the same meaning as the language the absence of which Gilmer asserts is fatal, the indictment language is sufficient."); *Brown v. State*, 944 So. 2d 103, 106 (¶8) (Miss. Ct. App. 2006) (finding that so long as the defendant can be found to have been reasonably aware of the charges against

18

them, a mere clerical error that is not prejudicial to the defendant does not render an indictment defective); *Moss v. State*, 752 So. 2d 427, 429-30 (¶7) (Miss. Ct. App. 1999) (finding that the indictment was not fatally defective because it properly outlined and notified Moss of the crime for which he was being charged because the language of the indictment as a whole was sufficient to notify him of the accused crime).

¶43. Contrary to the above-mentioned cases, we have found the indictment is legally insufficient in some instances. In one case, we found that the indictment did not provide sufficient facts to properly notify the defendant of the charge because, under the statute he was being charged, there were "a myriad of ways a person could violate the statute and chapter 33." *Williams v. State*, 169 So. 3d 932, 936 (¶10) (Miss. Ct. App. 2014). For this reason, we found it would be "impossible to ascertain from Williams's indictment the way in which he violated the chapter, since Williams's indictment provides no specific facts, much less the essential facts, as to how he allegedly violated the chapter." *Id*. In the past, this Court and our supreme court held "that an indictment must set forth every essential element of an offense with precision and certainty or every fact which is an element of a prima facie case of guilt," but this reasoning has since been altered. *Hawthorne v. State*, 751 So. 2d 1090, 1092-93 (¶9) (Miss. Ct. App. 1999) (quoting *Peterson v. State*, 671 So. 2d 647, 653 (Miss. 1996)), *abrogated by Caston v. State*, 949 So. 2d 852, 855-56 (¶¶7-10) (Miss. Ct. App. 2007). Our supreme court acknowledged a statement in *Carson v. State*, 212 So. 3d 22, 31 (¶33) (Miss. 2016), that "a challenge to an indictment for failure to charge the essential elements of a criminal offense affects a fundamental right, and may not be waived"; the

19

supreme court continued on to state that "if the indictment do[es] not contain sufficient description of the offense to notify the accused of 'the nature and cause of the accusation,' it is a nullity." *Hathorne v. State*, 376 So. 3d 1209, 1215 (¶19) (Miss. 2023) (quoting *Buford v. State*, 146 Miss. 66, 111 So. 850, 856 (1927)).

¶44. Like our supreme court and this Court have repeatedly addressed in the past, I acknowledge that an indictment must include all the essential elements of the charged crime. However, as noted in *Hathorne* and many other cases mentioned above, I also acknowledge that an indictment is legally sufficient and not fatally defective where it gives the accused sufficient notice of the charges being brought. In the present case, the indictment correctly uses the language of two of the three essential elements of murder by including "without authority of law" as well as "with deliberate design to effect his death." The only language that is missing is directly saying that "the defendant killed the victim." Nevertheless, the indictment specifically refers to Mississippi Code Annotated section 97-3-19, which is Mississippi's staple statute for murder. Further, the labeled heading for Count I in the indictment is "MURDER."

¶45. Because this Court has previously found indictments to not be defective due to missing language, I believe we need to be consistent with how we consider indictments defective or not. As outlined above, the cases where we typically find the indictment is not fatally defective are instances where no imperative facts or law is missing because, from the language that is included, the indictment as a whole is clear on the alleged crime and charges being brought. Whereas, in the instances we do find the indictment is fatally defective, it is

for reasons such as the indictment is missing facts or law or information that cannot be inferred by the indictment when read as a whole or when the facts of the indictment are insufficient to support the alleged crime committed and the charges being brought.

¶46. In this instance, considered as a whole, Daniels' indictment for Count I clearly alleges that Daniels killed Washington, and there is sufficient notice of the crime being brought against him even though it does not contain all the specific language of the essential elements of murder. In conclusion, to avoid further inconsistencies in our rulings, I believe there needs to be a clear guidance set for courts as to what renders an indictment insufficient and fatally defective when the facts and the law included in the indictment are taken as a whole to give the defendant sufficient notice of the charges being brought against the person.

**McDONALD, LAWRENCE AND SMITH, JJ., JOIN THIS OPINION.**

**EMFINGER, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶47. Count I of the indictment against Daniels purports to charge Daniels with first-degree murder. Count I, however, fails to allege and charge that Daniels actually killed anyone! The lead opinion recognizes this defect yet adopts the State's position that the failure to charge this essential element of the crime of murder was harmless error. This brings to mind the old saying that "close only counts in horseshoes and hand grenades." Because this count of the indictment does not even come close to properly charging Daniels with murder, I must respectfully dissent.

¶48. Neither the State nor the lead opinion cites a single case where a Mississippi appellate court has found that the failure of a murder indictment to *specifically* allege and charge that

the defendant *actually killed a person* to be harmless error. Instead, both solely rely on *Tran* to reason that Daniels, through discovery, still had "a fair and adequate opportunity to prepare for and defend against" the indicted charge. *Tran v. State*, 962 So. 2d 1237, 1241 (¶16) (Miss. 2007).

¶49.    I disagree with the harmless error finding for three reasons. First, *Tran* was a case of first impression where the court was called upon to interpret the requirements of the money laundering statute, Mississippi Code Annotated section 97-23-101.[5] *Tran*, 962 So. 2d at 1241 (¶13). The indictment in *Tran* tracked the language of the statute.[6] *Id*. The indictment charged, in part, that the money at issue represented "proceeds of specified unlawful activity." *Id*.  The court found that because the indictment did not affirmatively identify that activity, the indictment was defective.[7] *Id*. at 1246 (¶36). The court further found, however, that the defendant had been given ample notice, through discovery, that the State intended to prove that the money represented proceeds from drug trafficking activities. *Id*. at 1247-48 (¶¶39-43). Finding that the defect in the indictment was harmless error, the court affirmed Tran's conviction. *Id*. at 1248 (¶46). In the present case, Daniels was not charged with money

---

[5] This was the first and only case appealing a conviction under the Mississippi money laundering statute.

[6] *See Warren v. State*, 187 So. 3d 616, 622 (¶11) (Miss. 2016). The Mississippi Supreme Court has held that an indictment that tracks the language of the statute is generally sufficient to inform the accused of the nature and cause of the accusation. *King v. State*, 580 So. 2d 1182, 1185 (Miss. 1991).

[7] The essential element was actually charged in the *Tran* indictment; however, the court found that the element should be more specifically described. *Tran*, So. 2d 962, at 1248 (¶44).

laundering and his indictment does not track the language of the murder statute. In fact, because the indictment completely omits an essential element of the crime of murder, the indictment does not charge *any* crime at all.

¶50.    Second, *Tran* was decided in 2007, before the Mississippi Rules of Criminal Procedure were adopted and made effective as of July 1, 2017. As noted in the lead opinion, the Mississippi Rules of Criminal Procedure's requirements for the content of an indictment differ from the rules in effect when *Tran* was decided. The comment to Rule 14.1(a) specifically points out:

> Rule 14.1(a) is based upon former Rule 7.06 of the Uniform Rules of Circuit and County Court. **The rule now provides that, in addition to the essential facts constituting the offense charged, the indictment must also include the essential elements of the offense charged**.

(Emphasis added). Accordingly, indictments must now, specifically, contain the essential elements of the offense charged. Daniels' indictment did not allege that he killed and murdered Washington.

¶51.    Finally, Count I of Daniels' indictment does not charge any crime at all and is void. It does not allege that he actually did anything. In *Hathorne v. State*, 379 So. 3d 1209, 1214-15 (¶19) (Miss. 2023), the Mississippi Supreme Court reasoned:

> Our case law makes clear that "a substantive defect in an indictment cannot be cured by extrinsic proof and is not waived by the failure to demur thereto." *Copeland* [*v. State*], 423 So. 2d [1333,]1336 [(Miss. 1982)]. . . . "[T]his Court has squarely held that challenges to the substantive sufficiency of an indictment are not waivable. Thus, they may be raised at any time, including on appeal." *State v. Berryhill*, 703 So. 2d 250, 254 (Miss. 1997) . . . . Further, "a challenge to an indictment for failure to charge the essential elements of a criminal offense affects a fundamental right, and may not be waived." *Carson v. State*, 212 So. 3d 22, 31 (Miss. 2016) . . . (internal quotation mark omitted)

23

(quoting *Ross v. State*, 954 So. 2d 968, 1015 (Miss. 2007)). This Court's longstanding precedent places great emphasis on the protection of the right to challenge the sufficiency of an indictment. *See also State v. Buckhalter*, 119 So. 3d 1015, 1019 (Miss. 2013) (holding that a flawed indictment "affects a fundamental right"). "The constitutional right of the accused, to demand 'the nature and cause of the accusation against him,' cannot be waived or surrendered, and therefore, **if the indictment do[es] not contain [a] sufficient description of the offense to notify the accused of 'the nature and cause of the accusation,' it is a nullity, and may be objected to at any time**." *Buford v. State*, 146 Miss. 66, 111 So. 850, 856 (1927) (emphasis added) (internal quotation marks omitted) (quoting *Newcomb v. State*, 37 Miss. 383 (1859)). Here, **the indictment against Hathorne, as a nullity, was and is void, and a judgment of conviction based on a nullity "must necessarily be itself a nullity**." *Ex parte Scott*, 70 Miss. 247, 11 So. 657 (1892).

(Emphasis added). In the case at hand, Daniels' indictment failed to include all the essential elements of murder. More specifically, and arguably most importantly, the indictment failed to allege that Daniels killed Washington. In *Mangum v. State*, 64 So. 3d 503, 503 (¶1) (Miss. Ct. App. 2010), this Court held:

> In order for an indictment to be legally sufficient, it must, among other things, contain all the essential elements of the crime charged. The essential elements of murder are that: (1) the defendant killed the victim, (2) without authority of law, and (3) with deliberate design to effect his death.

In a specially concurring opinion by Justice Kitchens, fully joined by four other justices and in part by another, our supreme court in *Neal v. State*, 15 So. 3d 388, 411 (¶65) (Miss. 2009) (Kitchens, J. concurring), warned prosecutors:

> Although the defendant frames the issue in the context of a jury instruction, **I cannot overlook the curiously-drafted indictment's coming dangerously close to omitting an essential element of murder: that is, that the defendant killed the victim**. As the majority correctly observes, Mississippi Code Section 99-7-37 sets forth explicitly and succinctly all that is necessary to charge an accused person with non-capital murder. Maj. Op. at ¶ 11, n. 3. In this case, however, the drafter of the indictment apparently undertook to improve upon this time-tested, simple, and sufficient language. This

indictment alleges that Neal "did willfully, unlawfully, and feloniously *decapitate* Lakeshia Cleveland, a human being; Jermaine Neal acted with the deliberate design to effect the death of Lakeshia Cleveland, in direct violation of Section 97-3-19(1)(a)."

(Emphasis added) (footnote omitted).

¶52. Because the language of Count I of Daniels' indictment misses the mark entirely, I would find that Daniels' conviction for manslaughter, as a lesser-included offense of murder, must be reversed and the matter remanded to the circuit court. I concur with the analysis and decision to reverse and remand the aggravated assault convictions as to Counts III, IV and V.

**BARNES, C.J., CARLTON AND WILSON, P.JJ., AND McCARTY, J., JOIN THIS OPINION.**